RECEIVED
IN MONROE, LA
AUG 2 5 2008
ROBERT H. SHEMWELL, CLERK
WESTERN DISTRICT OF LOUISIANA

UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

MONROE DIVISION

| | |
|---|---|
| FRANK WILLIS | CIVIL ACTION NO. 05-1010 |
| VERSUS | JUDGE ROBERT G. JAMES |
| TRC COMPANIES, INC. | MAG. JUDGE KAREN L. HAYES |

## RULING

Pending before the Court are motions in limine filed by the parties in the above-referenced matter. Plaintiff Frank Willis ("Willis") filed a "Daubert Motion to Exclude the Testimony of Kim Early," the expert for Defendant TRC Companies, Inc. ("TRC") [Doc. No. 112]. TRC filed a "Motion in Limine to Exclude John W. Dean's Report at Trial" [Doc. No. 114]. TRC also filed three additional motions in limine: Motion in Limine to Exclude Select Parol Evidence at Trial [Doc. No. 115], Motion in Limine to Exclude Evidence at Trial with Respect to Other Acquisitions [Doc. No. 116], and Motion in Limine to Exclude Evidence of Recorded Conversations at Trial [Doc. No. 117].

The motions are resolved as follows.

I. **Expert Testimony**

　　A. **Willis's *Daubert* Motion to Exclude the Testimony of Kim Early [Doc. No. 112]**

　　　　1. **Willis's Argument**

Willis contends that the testimony of TRC's expert, Kim Early ("Early") should be excluded for the following reasons:

(1) Early's opinion's about the value of WEI before acquisition and after

> Willis's departure and the amount of earnout Willis actually earned are irrelevant because they do not account for the fact that Willis anticipated sufficient resources;

(2) Early is not qualified as a business valuation expert as a former businessman turned litigation "consultant";

(3) Early's opinions are not based on known or testable methodology, but on "non-numeric 'observations'";

(4) Early's opinions are not supported by verifiable facts.

Federal Rule of Evidence 702 establishes the standards for admissibility of expert testimony to assist a trier of fact in understanding evidence or determining a fact in issue. In determining whether expert testimony is reliable and relevant, the district court's role in applying Rule 702 is that of a gatekeeper. *See Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 597-98 (1993). However, as gatekeeper, the district court is not intended to replace the adversary system: "Vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." *United States v. 14.38 Acres of Land, More or Less Situated in Lefore County, Miss.*, 80 F.3d 1074, 1078 (5th Cir. 1996) (quoting *Daubert*, 509 U.S. at 596).

In determining whether to allow expert opinion testimony, the court must first decide whether the witness is qualified as an expert by knowledge, skill, experience, training, or education. *See Moore v. Ashland Chemical, Inc.*, 126 F.3d 679, 684 (5th Cir. 1997). A district court should refuse to allow an expert witness to testify if it finds that the witness is not qualified to testify in a particular field or on a particular subject. *Wilson v. Woods*, 163 F.3d 935 (5th Cir. 1999).

If a witness is qualified to testify, the court must then determine whether the proffered

2

testimony is both relevant and reliable. "The expert testimony must be relevant, not simply in the sense that all testimony must be relevant, Fed. R. Evid. 402, but also in the sense that the expert's proposed opinion would assist the trier of fact to understand or determine a fact in issue." *Bocanegra v. Vicmar Services, Inc.*, 320 F.3d 581, 584 (5th Cir. 2003) (citing *Daubert*, 509 U.S. at 591-92). "Rule 702 'requires a valid scientific connection to the pertinent inquiry as a precondition to admissibility.'" *Id.* (citing *Daubert*, 509 U.S. at 592).

As to reliability, Rule 702 only authorizes the admission of expert testimony when "(1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case." Fed. R. Evid. 702. Expert testimony requires more than "subjective belief or unsupported speculation." *Daubert*, 509 U.S. at 590.

In *Daubert*, the Supreme Court provided a four-part test for evaluating whether an expert has employed a reliable methodology:

1. Has the methodology been tested or is testable?
2. Has the methodology been subjected to peer review and publication?
3. Is there a known or knowable error rate for the methodology?
4. Is the methodology generally accepted in the relevant scientific field?

*Id.* at 593-594. The list provided by the Supreme Court in *Daubert* is not exclusive, but rather flexible, and grants the court "broad latitude" in determining the reliability of a particular expert or his conclusions. *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 139 (1999). It is incumbent upon the court to "make certain that an expert, whether basing testimony upon professional studies or personal experience, employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field." *Id.* at 152.

3

Willis challenges TRC's expert, Early, on all fronts. Willis contends that Early is not qualified to testify, his testimony is not relevant, and his testimony is not reliable.

First, the Court finds that Early is qualified to testify as an expert in the valuation of engineering firms. Although Early has not taught in the business valuation field, is not published, and holds no business valuation certifications, he is not required to have any of these qualifications to serve as an expert. As TRC points out, Early is a certified public accountant ("C.P.A."), holds a Master's degree in Business Administration, has thirty years of experience in business, including serving as a C.E.O. of a technologies company, has spent much of his career valuing and acquiring engineering firms, and now serves as a valuation consultant with a specific focus on engineering and consulting businesses.

Second, the Court also finds that Early's opinions are both relevant and reliable. Although Willis contends that Early's testimony is "irrelevant," Willis's true complaints are that Early did not have enough knowledge about the claims in this litigation and that his valuation failed to account for the resources Willis anticipated receiving. The value of WEI before acquisition of its stock by TRC, the value of WEI after Willis's departure, and the amount of earnout paid to Willis are all relevant to damages. Willis's complaints are precisely the types of issues that he can address in cross-examination of Early.

Early's methodology is also generally accepted and thus reliable. Willis points to seven statements where Early begins, "we think," "we feel," "we estimated," or "we concluded." Willis also argues that it is impossible to determine a rate of error in Early's valuations because he has never been published or peer-reviewed. Finally, Willis attacks Early's use of other engineering firm acquisitions without regard to the details of how many engineers were

4

employed and other relevant facts to make those firms true comparables.

However, TRC correctly points out that Willis's focus is incorrect. While Willis disputes Early's opinions and the form of those opinions, the Court is required to look at Early's principles and methodology, not just his conclusions. Early explains that he used the M & A (mergers and acquisitions) approach to valuation, which TRC explains is a guideline transaction model of valuing businesses under the market approach. Early valued WEI by comparing transactions involving companies with similar characteristics. Although Early used a different term to describe his valuation method, the guideline transaction method has been tested and peer reviewed.

Federal Rules of Evidence 702 and 703 require only that Early's testimony be based upon "sufficient facts or data" (Rule 702) which were "made known to the expert at or before the hearing" (Rule 703). Early's testimony meets these requirements because it is based on facts, documentation, and information provided by TRC.

Early testified that he spoke with Richard Dale at TRC. Dale does not recall speaking with Early, but did provide information to TRC's attorneys based on a request from Early. Willis also refers to a "troubling email" on November 12, 2007, between TRC's attorney Stephen Lafleur and Early about changes to the expert report that was forwarded to one of Early's partners with the comment, "I guess Martin [Dodd, TRC's in-house counsel] has not given up on his request for changes to our report." The report was supposedly stripped of negative information about the due diligence conducted by TRC employee Stephen McNeil.[1] All of these

---

[1] In July 2004, TRC financial employees, Greg Hobbs ("Hobbs") and Stephen MacNeil ("MacNeil"), did an on-site inspection of WEI. Following the visit, MacNeil sent an email to Hemant Wadhwa ("Wadhwa"), assistant to Dick Ellison and a specialist in acquisitions. The

5

attacks by Willis amount to an attack on Early's credibility and susceptibility to influence from TRC and its counsel. However, Early attached the financial reports upon which he based his opinions, and Willis does not dispute that he obtained his information from TRC. Willis's attack is properly addressed on cross-examination and to the weight the jury may assign to the valuation, not to its outright exclusion.

In summary, Willis's Daubert Motion to Exclude the Testimony of Kim Early [Doc. No. 112] is DENIED.

### B. TRC's Motion in Limine to Exclude John W. Dean's Report at Trial [Doc. No. 114]

TRC moves the Court for an order preventing Willis's expert John Dean from testifying altogether, or, alternatively, from testifying as to specific matters. If the Court does not find that TRC is entitled to relief on the record, TRC requests a *Daubert* hearing.

TRC moves the Court to exclude the following:

(1) Dean's value of future salary or benefits because Willis was employed by WEI, which is not a party to the action[2];

(2) Dean's value of lease payments for office space rental because the agreement was between Willis and WEI, which is not a party to the action;

---

email was also sent to Dodd and to C.F.O., Harold Elston. MacNeil questioned the wisdom of the WEI acquisition because its value was based upon Willis remaining as an employee after his proposed employment agreement and earnout period ended. He pointed out concerns about growth of the business because WEI had a "stormy" relationship with the local firm that was expected to provide support. He was further concerned because TRC's Hunter (Texas) office had not worked effectively with TRC's Fort Worth office, located one-half hour away, and thus could not be expected to work effectively with or provide support to WEI in Louisiana. Additionally, MacNeil raised concerns about WEI's accounts receivable and work in progress, particularly the Avoyelles Water Commission project.

[2]Willis has a separate state court action pending against WEI.

6

(3) Dean's values of "Earnout 1," "Earnout 2," and "Tax Gross-Up" because he did not identify evidence supporting the reasonableness of the 20% annual increase in gross revenue; and

(4) "any testimony with respect to the substance of Dean's report."

In his report, Dean identifies six elements of Willis's income that Wills could have expected if he continued his employment from 2005-2014: (1) salary, (2) earnout 1, (3) earnout 2, (4) tax gross-up, (5) benefits, and (6) rent.

With regard to rent, the Court finds that TRC's motion in limine is MOOT. Willis has withdrawn his claim for breach of the office lease. Dean testified that he was "dropping" that component from his calculations and provided TRC's counsel with recalculations at his deposition.

The Court must now address TRC's remaining arguments. First, TRC objects to Dean's valuation of Willis's projected salary and benefits. TRC argues that neither Willis's salary nor benefits are relevant because Willis was employed pursuant to an agreement with WEI, not TRC, and WEI is not a party to this action. Even if this agreement is properly before the Court, TRC argues that the employment agreement was for a period of three years with no renewal period, and Dean's valuation for a period of ten years is improper. TRC also contends that Dean improperly used a flat rate of $20,000.00 for benefits.

Willis has two causes of action at issue here: breach of contract and negligent/fraudulent misrepresentation. As TRC correctly points out, Willis's negligent/fraudulent misrepresentation is not a tort based on Louisiana Civil Code article 2315, but is actually fraud in the inducement, a vice of consent, entitling him to rescission and damages under Louisiana Civil Code article 1953, *et seq. See Griffin v. BSFI Western E & P, Inc.*, 812 So.2d 726, 734 (La. App. 1 Cir. 2002)

("Misrepresentation, intentional (as in fraud) or negligent, can be characterized as a delict recognizable under La. C.C. article 2315. . . Fraud can also be pled as a basis for a contractual action. *See* La. C.C. art.1953 (general definition of fraud found in section of the Civil Code on vices of consent to conventional obligations or contracts)."). If Willis recovers on either of these claims, he is entitled to be placed in the position he would have been in if he had never entered into the contract with TRC. If Willis recovers on his breach of contract claim, his damages are determined by whether he proves bad faith or not. If he does not prove bad faith, then Willis may recover only foreseeable damages. La. Civ. Code art. 1996. ("An obligor in good faith is liable only for the damages that were foreseeable at the time the contract was made."). If he does prove bad faith, then Willis may recover consequential damages. La. Civ. Code art. 1997 ("An obligor in bad faith is liable for all the damages, foreseeable or not, that are a direct consequence of his failure to perform.").

The Court finds that, under any theory of recovery, Willis cannot recover damages for a ten-year period. If Willis shows that he was negligently or fraudulently induced into entering the Stock Purchase Agreement ("SPA") with TRC, then he is entitled to have the SPA rescinded and to recover damages sufficient to place him in the position he was in prior to entering the SPA. He would not be entitled to keep the amount paid to him for the purchase of WEI stock by TRC and recover damages extending for ten years of prospective employment and benefits.

With regard to the breach of contract claim, the Court finds, first, that Willis may recover salary and benefits because the employment agreement was part and parcel of the SPA, even though it was entered into between Willis and WEI. The Court also has no doubt that, for economic reasons if for no other, the parties contemplated a relationship beyond the three years

8

of the employment agreement. However, as TRC points out, any relationship beyond that time is mere speculation. There are any number of reasons why TRC and Willis may or may not have continued a relationship beyond the three years, and, if they had continued a relationship, they would have had to renegotiate the terms. Therefore, Willis may not recover damages beyond the three-year employment period because they simply were not foreseeable as a result of TRC's alleged breach.

On the other hand, if Willis proves that TRC breached the SPA in bad faith, then he may recover any consequential damages. In this circumstance, the Court finds that Willis may also recover the damages necessary to re-start his engineering practice. From the Court's review of the record, it appears that, as of 2008, Willis is at least near the revenue he was earning prior to the SPA. The Court reserves ruling on the number of years Willis may recover damages if he proves a bad faith breach of contract by TRC, but the Court is clear that Willis will not be able to recover for a ten-year period. Thus, TRC's Motion in Limine is GRANTED IN PART and DENIED IN PART.

Finally, as limited by the rulings above, the Court finds that Dean's use of a 20% growth rate is relevant, reliable, and admissible. In reaching a decision to use a 20% growth rate for the first three years, Dean testified that he relied on exhibits to the SPA, his personal meeting and telephone conferences with Willis to discuss the needs and opportunities related to resources, excerpts from the deposition of CEO Dick Ellison, and several emails between Willis and TRC representatives. Thus, TRC's Motion in Limine is DENIED as to this issue.

In summary, TRC's Motion in Limine to Exclude John W. Dean's Report at Trial [Doc. No. 114] is GRANTED IN PART, DENIED IN PART, and DENIED AS MOOT. TRC's motion

as to Willis's claim for rent is DENIED AS MOOT. TRC's motion is otherwise GRANTED IN PART and DENIED IN PART. The Court will permit Dean's testimony, but Dean cannot project Willis's damages beyond the three-year period of the employment agreement for his breach of contract claim. Dean cannot project Willis's damages beyond the time period required for him to bring his engineering practice to his pre-SPA earning levels for his bad faith breach of contract claim.

## II. TRC's Remaining Motions in Limine

### A. Defendant TRC's Motion in Limine to Exclude Select Parol Evidence at Trial [Doc. No. 115]

TRC moves the Court for an order preventing Willis from interrogating witnesses, producing documentary evidence, or making arguments or statements to the jury on the following:

(1) The "intent of the parties" beyond the terms of the [SPA] or the employment agreement, including without limitation alleged damages from lost income, salary and benefits beyond the period expressly incorporated into the written contracts; and

(2) The substance of any discussion, negotiation, correspondence, or other communication between any representative of TRC and Willis prior to the execution of the SPA which is the subject of this action, except to the extent such evidence is relevant to the definition of "resources" as referenced in the SPA, or to the extent such evidence is used to prove or disprove the particularly pled statements alleged to constitute fraudulent or negligent misrepresentation in Willis's First Amended Complaint.

10

TRC argues that "the substance of pre-acquisition communication is admissible only to the extent such evidence is relevant to the intent of the parties regarding 'resources' referenced in the [SPA], or to the extent such evidence relates to the particularly-pled statements alleged to constitute fraudulent or negligent misrepresentation in Willis's First Amended Complaint." [Doc. No. 141, p. 5].

Willis contends that neither the integration clause nor the parol evidence rule limits his damages; rather, the law on damages governs his recovery. He argues that if there was a good faith breach of contract, he is entitled to recover all foreseeable damages, La. Civ. Code art. 1996. If he proves bad faith breach of contract, then he is entitled to recover all consequential damages, whether foreseeable or not, La. Civ. Code art. 1997. He cites testimony of Martin Dodd, TRC's general counsel, that TRC contemplated a relationship going beyond three years (the earnout period). Willis contends that other TRC representatives testified similarly.

Consistent with the rulings above, TRC's Motion in Limine to Exclude Select Parol Evidence at Trial [Doc. No. 115] is GRANTED IN PART and DENIED IN PART. Willis may present evidence of the parties' pre-contract negotiations to (1) define "sufficient resources" for purposes of the breach of contract claim, (2) show the misrepresentations made by TRC, and (3) as evidence of damages. With regard to damages, the Court reserves further ruling until trial.

### B. Defendant TRC's Motion in Limine to Exclude Evidence at Trial with Respect to Other Acquisitions [Doc. No. 116].

TRC argues that Willis should not be allowed to introduce evidence or solicit testimony regarding any other acquisitions by TRC and any litigation as a result of such acquisitions because these other acquisitions are not relevant. TRC contends that the contracts between it and other third parties have no probative value with respect to any fact at issue regarding the Stock

11

Purchase Agreement between the parties in this case. TRC argues further that allowing Willis to present such evidence would result in a trial within a trial. Finally, TRC argues that Willis has identified no witnesses to testify about such acquisitions or related litigation.

Willis contends that evidence of other TRC acquisition failures and related litigation are relevant to TRC's alleged inability to deliver sufficient resources to Willis and WEI or otherwise comply with its contractual obligations. Willis argues that such evidence is admissible under Federal Rule of Evidence 404(b) to show knowledge. Willis argues that "TRC was aware of its inability to comply with certain contractual obligations related to other acquisitions, some of which resulted in litigation. This fact tends to make it more probable or not that TRC was aware of its inability to fulfill certain contractual promises made in favor of Willis and WEI." [Doc. No. 119, p. 2].

In reply, TRC argues that its past inability to deliver a particular resource to another affiliate does not mean that it had no present intent (at the time of negotiations) to deliver sufficient resources to Willis and WEI. "Evidence demonstrating anything less than **intent** is not relevant to a **misrepresentation of then-existing fact**." [Doc. No. 127, p. 2] (emphasis in original).

The Court disagrees and finds that other TRC acquisitions may be relevant to show that TRC intentionally or negligently misrepresented its ability to provide resources. However, such evidence is admissible only if the acquisitions were sufficiently similar to the Willis/WEI transaction to be truly comparable. Therefore, if Willis wishes to introduce this type of evidence, he must explain to the Court how the transactions are similar.

Accordingly, TRC's Motion in Limine to Exclude Evidence at Trial with Respect to

Other Acquisitions [Doc. No. 116] is GRANTED IN PART and DENIED IN PART. Willis will be permitted to introduce evidence regarding other acquisitions only if he shows the Court that the acquisitions were sufficiently similar to be relevant.

### C. Defendant TRC's Motion in Limine to Exclude Evidence of Recorded Conversations at Trial [Doc. No. 117]

Relying on the California Penal Code, TRC argues that Willis should not be allowed to interrogate witnesses, produce documentary evidence, or make statements or arguments before the jury about recordings of conversations between Willis and Dick Ellison and Willis and Maryann Ellison. The Ellisons were residents of and physically present in the State of California and did not consent to the recordings, and California requires both parties to a conversation to consent to its recording. *See* Cal. Penal Code § 632(a) (prohibiting the intentional recording of confidential communications without the consent of all parties); Cal. Penal Code § 632(c) (a recording is "confidential" if the circumstances reasonably indicate that any party expects the communication to be confined to the parties). TRC contends that this is an actual conflict of substantive law and that the law of California applies because of its greater interest in protecting the privacy of its citizens.

Willis responds that the Louisiana wiretap statute allows the recording of a conversation based on one party's consent. Willis, who was located in Louisiana, lawfully recorded the conversations under that statute. Willis argues that, under a conflict of laws analysis, Louisiana law has the greater interest when TRC solicited a Louisiana business, purchased the Louisiana business, and the ensuing litigation is in a federal court in Louisiana. Finally, Willis argues that TRC did not even address whether the recordings were admissible, only their lawfulness under California law.

13

The Court finds that the admissibility of these recordings raises issues of both state and federal law. It is clearly a question of federal evidence whether the recorded conversations are admissible if properly obtained. Although the parties have not addressed this issue, the recordings of conversations between Willis and CEO Dick Ellison are admissible because Ellison is an agent of TRC and his statements are not hearsay, but a party admission. It is unclear whether Maryann Ellison's statements are admissible as non-hearsay or under an exception to the hearsay rule.

However, the Court must determine if the recordings were properly obtained. Title III of the Omnibus Crime Control and Safe Streets Act of 1968 (also known as the Federal Wiretap Statute), prohibits the interception, use, and disclosure of wire, oral, or electronic communications, subject to certain exceptions. 18 U.S.C. § 2511(1)(a). Pursuant to Title III, a person not acting under color of state law **may**, without violating the statute, intercept an oral communication to which he is a party unless the purpose of the interception is to commit any "criminal or tortious act in violation of the Constitution or laws of the United States or of any state." 18 U.S.C. § 2511(2)(d). In other words, federal law applies a one-party consent rule, but permits states to enact greater protection (two-party consent). Willis's recording was in compliance with federal law because there is no evidence that his purpose was criminal or tortious, other than TRC's allegation that the recording violated California privacy laws.

TRC argues without authority that the Court should apply state substantive law because the original jurisdiction was based on diversity. However, the Court finds no basis for such an argument in an evidentiary determination prior to trial. Thus, Willis's recording of conversations with both Ellisons was properly obtained under federal law and may be admissible in defense of

TRC's federal law claim under Rule 10b-5 of the Securities Act of 1934, 15 U.S.C. § 78j.

With regard to the remaining state law claims, some federal courts have determined that the court must look to the law of the forum state because this is a matter of substantive law. *See Glinski v. City of Chicago*, No. 99 C 3063, 2002 WL 113884 (N.D. Ill. Jan. 29, 2002) (holding that the "Illinois Eavesdropping Act provision barring evidence should be applied in a federal case in which state law provides the rule of decision because it is a substantive rule, not procedural"; the Act has the dual purpose of determining police misconduct and protecting judicial integrity by not allowing courts to "condone the illegal gathering of evidence.")(citations omitted). Other courts have determined that federal law controls when the action "is based on federal law as well as state law." *Roberts v. Americable International, Inc.*, 883 F. Supp. 499, 504 (E.D. Cal. 1995) (The Court rejected a party's California state law "privacy privilege" because "[i]t is well settled that federal law applies to privilege claims brought in actions based in whole or in part on federal law." Although "[s]tate law may be a guide for decision," it is not binding and "may not be applied at all if federal law on the subject of privilege is inconsistent with state law.").

This Court need not resolve the issue, however, because federal and state law is consistent. In a diversity action, the federal court applies the law of the forum state, Louisiana, not California. Louisiana permits the recording of a telephone conversation, as long as one party consents. La. Rev. Stat. 15:1303(C)(4) ("It shall not be unlawful under this Chapter for a person not acting under color of law to intercept a wire or oral communication where such person is a party to the communication or where one of the parties to the communication has given prior consent to such interception, unless such communication is intercepted for the purpose of

committing any criminal or tortious act in violation of the constitution or laws of the United States or of the state or for the purpose of committing any other injurious act."). Willis was a party to the communication, chose to record the communication, and a Louisiana court would find the recording lawful.

Finally, if the Court were to apply the conflict of laws rules, the recordings are still not excludable based on the California penal code. Federal courts apply the conflict of laws rules of the forum state. *See Klaxon Co. v. Stentor Elec. Manu. Co.*, 313 U.S. 487, 496 (1941). Under Louisiana's approach to choice of law, the first inquiry is whether there is a true or false conflict of interest. *Jagers v. Royal Indemnity Co.*, 276 So.2d 309, 311 (La.1973). A false conflict occurs when it is found that only a single state has an interest in the application of its law, and that the other state involved has no interest in the application of its law in the case. *Armstrong v. Land & Marine Applicators, Inc.*, 463 So.2d 1327 (La. App. 5 Cir.1984).

If it is determined that a true conflict exists, Louisiana applies the interests analysis of the Second Restatement on the Conflict of Laws. *See* La. Civ. Code art. 3515. Article 3515 provides as follows:

> Except as otherwise provided in this Book, an issue in a case having contacts with other states is governed by the law of the state whose policies would be most seriously impaired if its law were not applied to that issue.
>
> That state is determined by evaluating the strength and pertinence of the relevant policies of all involved states in the light of: (1) the relationship of each state to the parties and the dispute; and (2) the policies and needs of the interstate and international systems, including the policies of upholding the justified expectations of parties and of minimizing the adverse consequences that might follow from subjecting a party to the law of more than one state.

La. Civ. Code art. 3515.

There is no actual conflict here. The federal law and the only state law at issue, that of the forum state, Louisiana, are the same. Both permit the recording.

Even if there is a conflict based on the differing wiretap laws in Louisiana and California, California has no interest in this litigation. This is a lawsuit between a citizen of Louisiana and a Delaware corporation with its corporate office in Connecticut. The general privacy concerns of California for its citizens certainly do not outweigh Louisiana's interest in the protection of its citizens and businesses from breaches of contract.

Accordingly, TRC's Motion in Limine to Exclude Evidence of Recorded Conversations at Trial [Doc. No. 117] is DENIED. The statements of Dick Ellison are admissible as non-hearsay (if otherwise relevant), but the Court will defer a determination of the admissibility of recorded conversations of Maryann Ellison until the parties present the Court with sufficient information to determine whether her statements are non-hearsay or subject to a hearsay exception.

### III. CONCLUSION

For the foregoing reasons, Willis's "Daubert Motion to Exclude the Testimony of Kim Early" [Doc. No. 112] is DENIED. TRC's "Motion in Limine to Exclude John W. Dean's Report at Trial" [Doc. No. 114] and Motion in Limine to Exclude Evidence of Recorded Conversations at Trial [Doc. No. 117] are also DENIED.

TRC's Motion in Limine to Exclude Select Parol Evidence at Trial [Doc. No. 115] and Motion in Limine to Exclude Evidence at Trial with Respect to Other Acquisitions [Doc. No.

116] are GRANTED IN PART and DENIED IN PART.

MONROE, LOUISIANA, this 25 day of August, 2008.

*Robert G. James*
ROBERT G. JAMES
UNITED STATES DISTRICT JUDGE